IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARD JAMES JEFFERSON,

    Petitioner,               2: 10 - cv - 2051 - TJB

    vs.

SUTTER COUNTY PROBATION DEPARTMENT,

    Respondent.            ORDER, FINDINGS AND RECOMMENDATIONS[1]

_____/

    Petitioner, Edward James Jefferson, is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of misdemeanor trespass after he refused to leave a farmers' market operated in a public park. Petitioner was attempting to set up a booth to register voters and obtain petition signatures, but refused to pay the required fee to operate a booth, claiming his activities were protected by the First Amendment. He is currently serving a sentence of three years on probation, and has completed a forty-five day sentence in

---

[1] Because Petitioner has not consented to the jurisdiction of a Magistrate Judge, a District Judge will be randomly assigned to consider these Findings and Recommendations.

1

county jail. Petitioner raises seven claims in this federal habeas petition; specifically: (1) he was engaging in activity protected by the First Amendment and therefore his conviction must be overturned ("Claim I"); (2) his trial counsel was ineffective for failing to argue in various motions Petitioner's right, under the First Amendment, to be present in the park ("Claim II"); (3) his counsel was ineffective in failing to advocate that his right to set up a booth at the market was protected by the First Amendment ("Claim III"); (4) his trial counsel was ineffective for failing to object to the introduction of evidence that Petitioner had engaged in similar activity in the past on the basis that the previous activity was protected by the First Amendment ("Claim IV"); (5) his trial counsel was ineffective for failing to argue that a jury instruction should be offered which included a statement that Petitioner was engaging in First Amendment protected activity ("Claim V"); (6) his trial counsel was ineffective for failing to object to evidence of Petitioner's prior convictions because Petitioner's activities were protected by the First Amendment ("Claim VI"); and, (7) his trial counsel was ineffective for failing to call a witness that would have been beneficial to the defense ("Claim VII"). For the reasons stated herein, the federal habeas petition should be denied.

## I. FACTUAL BACKGROUND

There is in the city of Yuba City a business enterprise in the form of a "certified" farmers' market, operated on Saturdays "[d]uring the growing season." Rep.'s Tr. at 25, 48-49, 63. The market is a "shopping venue," open to all "patrons." *Id.* at 27, 56. But it is not open to all who would vend; instead, it is a private enterprise operated by Dan Silva and his wife. *Id.* at 48, 49, 59.) The Silvas sell produce in the market. *Id.* at 68. Others who desire space must apply to Mr. Silva, who grants or denies space-rental contracts based on "economics." *Id.* at 28, 51-52, 55, 57, 58, 60-61, 64-65. In the market, seventy-five percent of the area is reserved for vendors of "certified" produce. *Id.* at 49, 65. If such a vendor's application is granted, the vendor's presence is contingent on paying Mr. Silva a space-rental fee of twenty-five dollars. *Id.* at 53, 61, 66.

In the physically-separated remaining twenty-five percent of the area there are non-"certified" vendors, whose space-rental fee may have been less. *Id.* at 49-50, 61-62, 65. As a matter of charity, Mr. Silva donated a space to a vender for "an orphanage in Tanzania," and another space for a man who provides free balloons to children. *Id.* at 50, 62. On occasion, voter registration activities have gone on directly outside the market area. *Id.*

The city benefits from Mr. Silva's business enterprise, in the form of "quality produce" being available to residents, and from presence of "commerce" in the downtown area. *Id.* at 24, 25. The city thus permits Mr. Silva to make private commercial use of otherwise public space. *Id.* at 28. The city provides no funds or labor, or anything other than free use of signs and physical barricades for street closure (which the city does not erect). *Id.* at 25, 51, 63. The city permits cordoning of an adjoining street from vehicle traffic. *Id.* at 25-26.

Petitioner receives money for gathering signatures for voter initiatives. *Id.* at 108-09. On August 11, 2007, he arrived at the farmers' market to engage in that business. He asked Mrs. Silva if he could set up a station for his "petitions." *Id.* at 69. Mrs. Silva directed him away from the area reserved for "certified" vendors, and toward the ends of the market where there were no vendors. *Id.* at 69-70. Petitioner refused to depart, and he made claims to the effect of having rights under the Constitution to remain in the area he was in. Further, "he leaned forward" and said, "I shut down Cesar Chavez Park in Sac and I've already been through this with Davis Farmers Market." *Id.* at 70. Cowed, and being taken away from her business duties in order to deal with Petitioner, Mrs. Silva decided to wait for her husband. *Id.* at 70, 71; *see id.* at 53. Petitioner went to the middle of the "certified" area and set up his own station. *Id.* at 70. Another vendor witnessed Petitioner curse at Mrs. Silva and threaten to shut down the market. *Id.* at 79. Some customers departed due to Petitioner's conduct. *Id.* at 80.

Petitioner returned on August 18, 2007, and simply set up station, taking another vendor's spot. *Id.* at 31, 71-73. Mr. Silva told Petitioner that he was in a paid spot and that a twenty-five dollar fee was required or Petitioner had to leave the "certified" area. Petitioner adamantly

3

refused. *Id.* at 53-54, 119. Again, he interrupted the flow of business. *Id.* at 76-77. Petitioner cursed loudly, and again drove customers from the market. *Id.* at 81, 92, 97.

Mr. Silva contacted the police. *Id.* at 55-56. Police officers arrived and spoke to Petitioner, who confirmed he did not and would not pay a fee. *Id.* at 29, 34, 38, 41-42. Petitioner recorded the conversation with a tape recorder. *Id.* at 32. When advised he could move to the front of the market, Petitioner told an officer that he would sue the city and that he would shut down the market as he had done before. *Id.* at 35. Petitioner was cited pursuant to a citizen's arrest. However, he refused to sign the citation and said he wished to be booked at the police station. At the police station, Petitioner signed the citation and was released. *Id.* at 35, 56.

## II. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. *See* 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. 2254(d); *Perry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

In applying AEDPA's standards, the federal court must "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). "The relevant state court determination for purposes of AEDPA review is the last reasoned state

court decision." *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). To the extent no such reasoned opinion exists, courts must conduct an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law, and whether the state court's decision was objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). "When it is clear, however, that the state court has not decided an issue, we review that question *de novo*." *Reynoso v.Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*, 545 U.S. 374, 377 (2005).

## III. ANALYSIS OF PETITIONER'S CLAIMS

1. Claim I

Petitioner's first claim raises a direct challenge to his conviction on First Amendment grounds. Specifically, Petitioner alleges that he was engaging in activity protected by the First Amendment when he was attempting to gather signatures and register voters at the farmers' market. On Petitioner's direct appeal, the Appellate Division of Superior Court for the County of Sutter concluded that "the rules and regulations [regulating the farmers' market] were reasonable and that the defendant's constitutional rights were not violated." *See* Lodged Doc. No. 3.

Assuming, *arguendo*, that a park remains a quintessential public forum when it is converted temporarily to a farmers' market, it is a reasonable conclusion that a requirement that those wishing to participate in the market pay a small fee to be permitted to set up a booth at the market represents a valid time, place, and manner restriction upon speech. *See United States v. O'Brien*, 391 U.S. 367 (1968). "[R]easonable time, place, [and] manner restrictions on speech

are permissible" in a traditional public forum. *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009) (alteration in original and internal quotation marks omitted) (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293(1984)); *See also Kaahumanu v. Hawaii*, __ F.3d __, 2012 WL 2018171 (9th Cir. June 6, 2012). Such restrictions in a traditional public forum are reasonable "provided [1] that they are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored to serve a significant governmental interest, and [3] that they leave open ample alternative channels for communication of the information." *Long Beach*, 574 F.3d at 1023 (alterations in original and internal quotation marks omitted) (quoting *Clark*, 468 U.S. at 293 (holding that a ban on camping on the national mall was a valid time, place, and manner restriction)); *see also City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984); *United States v. Grace*, 461 U.S. 171 (1983); *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45–46 (1983); *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647–648 (1981); *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771(1976); *Consolidated Edison Co. v. Public Service Comm'n of N.Y.*, 447 U.S. 530, 535 (1980).

The requirement that a participant in the farmers' market pay twenty-five dollars in order to set up a booth at the market is a content neutral requirement. The fee is required without regard to the content of the booth, be it to sell vegetables or register people to vote. Indeed, it is clear that Petitioner was in fact invited to set up his registration and petition booth at the market if he was willing to pay the fee. Rep.'s Tr. at 53-54, 119. Petitioner, however, refused, determined that he was constitutionally entitled to set up a booth without paying the fee.

It is also a reasonable determination that the fee requirement is narrowly tailored to serve a significant governmental interest. In *Thomas v. Chicago Park District*, 534 U.S. 316 (2002), the Supreme Court concluded that a permit requirement before a group could host large-scale events in a public park was a constitutionally permissible time, place, and manner requirement.

The object of the permitting requirement was "not to exclude communication of a particular content, but to coordinate multiple uses of limited space, to assure preservation of the park facilities, to prevent uses that are dangerous, unlawful, or impermissible under the Park District's rules, and to assure financial accountability for damage caused by the event. As the Court of Appeals well put it: '[T]o allow unregulated access to all comers could easily reduce rather than enlarge the park's utility as a forum for speech.'" *Id.* at 322 (internal citations omitted).

Here, many of the same considerations could lead a court to reasonably conclude that the fee requirement is narrowly tailored to serve a significant governmental interest. The State of California has determined that the creation of farmers' markets is a benefit to the People of California by providing them with quality, locally produced, reasonably priced agricultural products. Cal. Food & Ag. Code § 47000. The fee requirement allows the markets to maintain organization, cover costs of administration, and maintain a safe environment for patrons. Here, as in *Thomas*, to "allow unregulated access to all comers could easily reduce rather than enlarge the park's utility as a forum" for not only speech, but also the other tangible benefits that local parks provide to the public. *See also Cox v. New Hampshire*, 312 U.S. 569, 574 (1941); *Clark*, 468 U.S. at 296 ("the regulation narrowly focuses on the Government's substantial interest in maintaining the parks in the heart of our Capital in an attractive and intact condition, readily available to the millions of people who wish to see and enjoy them by their presence").

Finally, in order to be a valid time, place, and manner restriction, the fee requirement must "leave open ample alternative channels for communication of the information." *Long Beach*, 574 F.3d at 1023. "The Supreme Court generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting." *Ctr. for Fair Pub. Policy v. Maricopa Cnty.*, 336 F.3d 1153, 1170 (9th Cir. 2003) (internal quotation marks omitted) (quoting *Colacurcio v. City of Kent*, 163 F.3d 545, 554 (9th Cir.1998)). Here, the organizers of the market offered Petitioner

7

the opportunity to set up his voter registration booth along the perimeter of the market, so long as it was not in a spot reserved for a paying vendor.  Petitioner refused, claiming he had a right to set up his booth in the certified vendors area without paying the fee.  Petitioner was in no way prohibited from attempting to register citizens to vote or from seeking voter signatures from those who attended the market, but only from doing those activities from within the certified vendor area without first paying the required twenty-five dollar fee.

It is a reasonable conclusion that the fee requirement is a valid time, place, and manner restriction.  As such, under AEDPA, Petitioner is not entitled to relief on first claim.

2. Claims II-VI

Claims two through six raise various ineffective assistance of counsel claims.  Each claim is predicated on the fact that Petitioner's activity, voter registration at a farmers' market, is protected by the First Amendment.  For example, in Claim II Petitioner alleges that his trial counsel was ineffective for failing to adequately raise the First Amendment defense in various motions.  In Claim V, Petitioner claims his counsel was ineffective for failing to object to the introduction of evidence that Petitioner had engaged in similar activity in the past because the activity was protected by the First Amendment.

The Sixth Amendment guarantees effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating ineffective assistance of counsel.  First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.* at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *See id.* at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the range of professional competent assistance.  *See id.*  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Second, a petitioner must affirmatively prove prejudice. *See id.* at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." *Id.* The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, __ U.S. __, 131 S.Ct 770, 791, 178 L.Ed.2d 624 (2011). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697). When analyzing a claim for ineffective assistance of counsel where a state court has issued a decision on the merits, a habeas court's ability to grant the writ is limited by two "highly deferential" standards. *Premo v. Moore*, __ U.S. __, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011). "When § 2254(d) applies," as it does here, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *see also Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." (citations omitted)).

In this case, Petitioner fails to show how he was prejudiced by his counsel's alleged failure to raise Petitioner's First Amendment defense at various stages of his trial. As discussed above in Claim I, the state court reasonably concluded that Petitioner's activities were not protected by the First Amendment because the fee requirement could reasonably be interpreted as a valid time, place, and manner restriction upon speech. Because the state court concluded that Petitioner's First Amendment defense was meritless, his counsel's alleged failure to address such

9

a defense would have had no bearing upon the outcome of his trial.  Petitioner fails to show how any of his counsel's alleged deficiencies would have had any bearing upon his conviction.  As such, the state court reasonably concluded that Petitioner's claims lacked merit and Petitioner is not entitled to relief on any of his ineffective assistance of counsel claims based upon the First Amendment.

        3. Claim VII

In Claim VII, Petitioner alleges that his trial counsel was ineffective for failing to call a witness on Petitioner's behalf.  Petitioner's factual basis for this claim states as follows: "There was present at least one witness favorable to the defense, made known to counsel, and a notarized witness statement made available to counsel, yet no the witness was not called.  Defendant was prejudiced because with that witness, defendant would not have been required to take the stand and be impeached as he was."

Without more, Petitioner fails to state a claim which could potentially entitle him to relief.  Petitioner provides no information as to who this alleged witness is or what they would have potentially testified to.  It appears that the facts of this case are not disputed.  The only issue is whether Petitioner's activities were protected by the First Amendment, which is a question of law.  Petitioner fails to state a claim for ineffective assistance of counsel and, thus, he is not entitled to relief on this, his final, claim.

## IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to randomly assign a United States District Judge to this action.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections

1 with the court and serve a copy on all parties.  Such a document should be captioned "Objections
2 to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be
3 served and filed within seven days after service of the objections.  The parties are advised that
4 failure to file objections within the specified time may waive the right to appeal the District
5 Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file,
6 Petitioner may address whether a certificate of appealability should issue in the event he elects to
7 file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254
8 Cases (the district court must issue or deny a certificate of appealability when it enters a final
9 order adverse to the applicant).

10 DATED:  June 29, 2012

_____
TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE